UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WARREN BINGHAM as EXECUTOR OF THE ESTATE OF MARION BINGHAM, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-11690-IT |
| SUPERVALU INC., | ) ) ) | |
| Defendant. | ) ) | |

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO CERTIFY
QUESTIONS TO MASSACHUSETTS SUPREME JUDICIAL COURT
[Docket Nos. 62, 78]

February 20, 2015

Boal, M.J.

Plaintiff Warren Bingham, as Executor of the Estate of Marion Bingham (the "Estate"), brings this action pursuant to M.G.L. chs. 93A and 176D alleging that defendant Supervalu Inc. ("Supervalu") failed to effectuate properly a settlement of a prior action between the Estate and Supervalu's former subsidiary, Shaw's Supermarkets, Inc. ("Shaw's"). Supervalu has moved for summary judgment. Docket No. 62. The Estate opposes the motion for summary judgment and has moved to certify certain questions to the Massachusetts Supreme Judicial Court ("SJC"). Docket No. 78.[1] For the following reasons, the Court recommends that the District Judge assigned to this case grant Supervalu's motion for summary judgment and deny the Estate's motion to certify questions to the SJC.

---

[1] The District Court referred the motions to the undersigned for a report and recommendation on December 30, 2014. Docket No. 94.

1

I.      PROCEDURAL HISTORY

On June 21, 2013, the Estate filed the present action in state court. The Estate alleges that Supervalu was the negotiator and potential settler of the Estate's claims against Shaw's and is in the business of insurance. Complaint at ¶¶ 16, 21. The Estate further alleges that Supervalu violated M.G.L. chs. 93A and 176D by failing to make a fair and reasonable settlement offer to the Estate when judgment entered in the prior action on June 24, 2009, and by pursuing a "frivolous appeal." Id. at ¶¶ 22(17), 28.[2] On July 12, 2013, Supervalu removed the case to this Court on the basis of diversity jurisdiction. Docket No. 1.

Supervalu filed a motion for summary judgment on August 28, 2014. Docket No. 62. The sole issue presented by the motion is whether Supervalu was "in the business of insurance" under Chapter 176D. On October 3, 2014, the Estate filed a cross-motion for summary judgment. Docket No. 68. The District Court struck the Estate's cross-motion for summary judgment because it was untimely. Docket No. 86. The Court allowed the Estate to refile its memorandum of law in support of its cross-motion for summary judgment as an opposition to Supervalu's motion for summary judgment, with those portions that were unrelated to whether Supervalu was in the business of insurance deleted. Id. at 2. The Estate filed its opposition on October 29, 2014. Docket No. 87.[3] Supervalu filed a reply on November 3, 2014. Docket No. 93.

---

[2] The complaint contains several paragraph numbers that appear twice. Accordingly, in instances where a paragraph number repeats, the Court has included in parentheses the corresponding page number in the state court record (Docket No. 7). When referring to the state record or to the parties' pleadings and exhibits, the Court cites the docket page numbers rather than the page numbers in the original documents.

[3] The Estate filed a motion for reconsideration of the District Court's order striking its cross-motion for summary judgment. Docket No. 89. The District Court denied the motion for reconsideration without prejudice to the Estate refiling its cross-motion for summary judgment

2

The Estate also filed a motion to certify two questions of law to the SJC on October 18, 2014. Docket No. 78. Supervalu filed an opposition on November 1, 2014. Docket No. 91.

The Court heard oral argument on February 11, 2015.

II.   FACTS[4]

   A.   The Underlying Action

On June 27, 2006, the Estate brought a prior lawsuit against Shaw's for negligence and wrongful death arising from a January 16, 2006 incident at a Shaw's East Boston store (the "Underlying Action").[5] When Shaw's failed to respond to the Estate's interrogatories, the state trial court entered judgment on liability against Shaw's pursuant to Mass. R. Civ. P. 33.[6] On June 24, 2009, after a hearing on damages, the court entered a judgment for damages against Shaw's in the amount of $407,606.42 plus costs.[7]

---

in the event that the District Court denies Supervalu's pending motion for summary judgment. Docket No. 92.

[4] The facts are largely undisputed. As noted below, the Estate purports to deny several of Supervalu's statements of fact but has failed to point to any admissible evidence to dispute them. Because this case is before the Court on a motion for summary judgment, the Court sets out any properly disputed facts in the light most favorable to the Estate, the non-moving party. See DeNovellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997). The facts are derived from Supervalu's Statement of Undisputed Material Facts of Record (Docket No. 62) ("Def. SOF") and Plaintiff's Response to Supervalu, Inc.'s Statement of Undisputed Material Facts of Record (Docket No. 70) ("Pl. SOF").

[5] Pl. SOF ¶¶ 5, 44; Def. SOF ¶ 44.

[6] Def. SOF ¶ 50; Pl. SOF ¶ 50.

[7] Def. SOF ¶ 52; Pl. SOF ¶ 52.

On June 24, 2009, Shaw's filed a notice of appeal from the entry of judgment in the Underlying Action.[8] The Massachusetts Appeals Court denied Shaw's appeal in November 2010.[9] Supervalu, who was not a party in the Underlying Action, ultimately paid the default judgment in full, with interest and costs, on December 8, 2010.[10]

Following Supervalu's payment of the judgment on December 8, 2010, it heard nothing from the Estate or its lawyers until it received a Chapter 93A demand letter on April 24, 2013.[11] In March 2013, Supervalu sold all of its interests in its former subsidiary New Albertson's, including its former subsidiary Shaw's.[12]

  B. <u>Facts Regarding Whether Supervalu Is In The Business Of Insurance</u>

The property on which the accident giving rise to the Underlying Action occurred was operated by Shaw's.[13] At the time of the accident, Shaw's was a subsidiary of Albertson's, Inc.[14] Albertson's, Inc. was unaffiliated with Supervalu at the time of the accident.[15]

On June 2, 2006, Supervalu, through its subsidiary, New Albertson's, Inc., acquired the stock and most of the stores of Albertson's.[16] Shaw's then became a subsidiary of New

---

[8] Def. SOF ¶ 53; Pl. SOF ¶ 53. In its statement of facts, Supervalu notes the date as "June 29, 2009 (sic)" based on the date alleged in the Complaint. The Estate admitted this fact. However, it appears that the correct date is June 24, 2009. See Docket No. 63-9 at 5.

[9] Def. SOF ¶ 54; Pl. SOF ¶ 54.

[10] Def. SOF ¶¶ 4, 55; Pl. SOF ¶¶ 4, 55.

[11] Def. SOF ¶ 57; Pl. SOF ¶ 57.

[12] Def. SOF ¶ 58; Pl. SOF ¶ 58.

[13] Def. SOF ¶ 6; Pl. SOF ¶ 6.

[14] Id.

[15] Def. SOF ¶ 7; Pl. SOF ¶ 7.

Albertson's.[17] At the time of the acquisition of the Albertson's stores, New Albertson's operated approximately 1,125 supermarket stores under various brand names or "banners" including Acme, Albertson's, Jewel-Osco, Shaw's, Star Market and Save-On.[18] During the litigation of the Underlying Action, between 2006 and 2010, Supervalu, through its ownership of New Albertson's, was the indirect parent corporation of Shaw's.[19]

At the time of the accident, Albertson's maintained a general liability insurance policy for itself and all of its subsidiaries, including Shaw's, through Lexington Insurance Company.[20] From May 1, 2005 through May 1, 2006, Albertson's was insured through Lexington Insurance in the sum of $2,000,000 in "excess of a Self-Insured Retention"[21] of $2,000,000.[22] In addition, Albertson's was insured under a Commercial Umbrella Policy issued by American International Specialty Lines Insurance in the sum of $25,000,000 per occurrence.[23] These policies were "occurrence" based policies, covering Shaw's and Albertson's for the claims in the Underlying Action, subject to a self-insured retention of $2,000,000.[24]

---

[16] Def. SOF ¶ 8; Pl. SOF ¶ 8.

[17] Def. SOF ¶ 9; Pl. SOF ¶ 9.

[18] Def. SOF ¶ 11; Pl. SOF ¶ 11.

[19] Def. SOF ¶ 12; Pl. SOF ¶ 12.

[20] Def. SOF ¶ 15; Pl. SOF ¶ 15.

[21] A "self-insured retention" is "[t]he amount of an otherwise-covered loss that is not covered by an insurance policy and that usu[ally] must be paid before the insurer will pay benefits…" Black's Law Dictionary 1365 (7th ed. 1999).

[22] Def. SOF ¶ 16; Pl. SOF ¶ 16.

[23] Def. SOF ¶ 17; Pl. SOF ¶ 17.

[24] Def. SOF ¶ 20; Pl. SOF ¶ 20.

These insurance policies were transferred to New Albertson's upon the acquisition of Albertson's.[25] Through its subsidiary's acquisition of Albertson's, Supervalu acquired the potential liability related to the Estate's claim against Shaw's, as well as the coverage available under the existing policies.[26] In addition, Supervalu had an umbrella insurance policy for all of its business activities.[27]

On February 2, 2007, Shaw's provided notice of the Estate's claim to Lexington Insurance.[28] Lexington Insurance acknowledged receipt of this notice on February 9, 2007.[29]

At the time of the accident, Albertson's maintained centralized general liability risk management and claims administrative functions with claims processing procedures and litigation management guidelines for all of its subsidiaries, including Shaw's.[30] Those functions, procedures and guidelines were acquired and retained by New Albertson's following the acquisition of Shaw's in June 2006 and were utilized until 2010, when Supervalu developed centralized litigation and claims handling procedures for all the Supervalu subsidiaries.[31]

---

[25] Def. SOF ¶ 18; Pl. SOF ¶ 18.

[26] Def. SOF ¶ 19; Pl. SOF ¶ 19.

[27] Def. SOF ¶ 24. The Estate "denies" this fact but provides no admissible evidence to dispute it. The Estate relies on Supervalu's Rule 26 automatic disclosures, whereby Supervalu represented that there were no available insurance agreements. Pl. SOF ¶ 24. However, Rule 26 only requires disclosure of insurance agreements available to satisfy all or part of a judgment in this case. Fed. R. Civ. P. 26(a)(1)(iv). The fact that no such agreement is available does not negate the fact that Supervalu may have had other insurance policies to cover other situations.

[28] Def. SOF ¶ 22; Pl. SOF ¶ 22.

[29] Def. SOF ¶ 23; Pl. SOF ¶23.

[30] Def. SOF ¶ 13; Pl. SOF ¶ 13.

[31] Def. SOF ¶¶ 14, 33; Pl. SOF ¶¶ 14, 33.

With respect to claims such as those of the Estate in the Underlying Action, Supervalu provided a centralized, risk management function whereby it would resolve claims and issue settlement checks as a centralized risk management and administrative function for all its subsidiaries, including Shaw's.[32] Supervalu would allocate expenses to each of its subsidiaries based on a formula involving program costs, such as premiums paid to insurance companies and losses.[33] Once a claim was settled, Supervalu would issue a settlement check on behalf of a particular store or banner.[34] In that manner, the financial affairs and expenses for all Supervalu subsidiaries were centralized in a single "bucket" for all corporate claims thereby streamlining and simplifying the claim-handling, settlement, and check-issuing process.[35] Supervalu did not profit from its claims administration function.[36] Supervalu was never registered as an insurer with the Commonwealth of Massachusetts.[37]

The settlement check written to the Estate was drawn on a Supervalu account.[38] Supervalu was not reimbursed by Shaw's for this payment.[39]

---

[32] Def. SOF ¶ 34; Pl. SOF ¶ 34.

[33] Pl. SOF ¶ 34.

[34] Pl. SOF ¶ 37.

[35] Def. SOF ¶ 38; Pl. SOF ¶ 38.

[36] Def. SOF ¶ 42. The Estate disputes this fact but the cited materials do not contradict it.

[37] Def. SOF ¶ 31; Pl. SOF ¶ 31. The Estate notes that Supervalu was also never registered as a self-insured in Massachusetts. Pl. SOF ¶ 31. The Estate, however, has not cited to any authority requiring Supervalu to register as a self-insured. At oral argument, the Estate conceded that it was not aware of any such requirement.

[38] Pl. SOF ¶ 30.

[39] Id.

During the pendency of the Underlying Action, Risk Planners, Inc. was a wholly-owned subsidiary of Supervalu.[40] Risk Planners was formed in 1969 as a retail insurance agency offering risk management and property and casualty insurance products and services to independent business clients unaffiliated with Supervalu or its subsidiaries.[41] At no time did Risk Planners have any responsibilities with respect to the brokerage of insurance for Supervalu or any of its subsidiaries, including Shaw's.[42] The insurance policy covering the Estate's claims against Shaw's was procured through Shaw's predecessor owner, Albertson's, not Supervalu or Risk Planners.[43] Risk Planners did not provide any services to Shaw's prior to or at the time of the accident, or any time during the pendency of the Underlying Action.[44] Risk Planners did not engage in any activities with respect to the Underlying Action and none of the employees who handled the Estate's claim against Shaw's was employed by Risk Planners.[45] On March 7, 2011, Supervalu sold the assets of Risk Planners to Arthur J. Gallagher, Inc.[46]

---

[40] Def. SOF ¶ 64; Pl. SOF ¶ 64.

[41] Def. SOF ¶ 65; Pl. SOF ¶ 65.

[42] Def. SOF ¶ 66. This fact is also disputed by the Estate but it has not pointed to any admissible evidence to dispute it. The Estate cites to Supervalu's own statement of facts that do not contradict this statement.

[43] Def. SOF ¶ 67; Pl. SOF ¶ 67.

[44] Def. SOF ¶ 68; Pl. SOF ¶ 68.

[45] Def. SOF ¶¶ 69, 70; Pl. SOF ¶ 70. The Estate disputes that Risk Planners did not engage in any activities with respect to the Underlying Action but has not provided any evidence to the contrary.

[46] Def. SOF ¶ 71; Pl. SOF ¶ 71.

III.     ANALYSIS

Supervalu moves for summary judgment on the ground that the Estate cannot establish that Supervalu is in the "business of insurance" as required for a claim alleging unfair and deceptive insurance practices under Chapters 93A and 176D. The Estate opposes the motion. Docket No. 87. In the alternative, the Estate asks the Court to certify two questions to the SJC should the Court disagree with the Estate that Supervalu is engaged in the business of insurance. Docket No. 79 at 2.

For the reasons stated below, the Court recommends that the District Court grant Supervalu's motion for summary judgment and deny the Estate's motion to certify.

    A.     Motion For Summary Judgment

    1.     Standard Of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." Id. (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts

showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). However, "[a]s to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation omitted). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

      2.      The Estate Has Failed To Put Forth Any Evidence Showing That Supervalu Was "In The Business Of Insurance"

The Estate asserts that Supervalu violated Chapter 93A by failing to effectuate a prompt, fair and equitable settlement of the Estate's claim in the Underlying Action after liability became reasonably clear on June 24, 2009, the date the judgment entered. Complaint ¶¶ 22-27. Unfair settlement practices are a violation of Chapter 93A only if that conduct also violates M.G.L. c. 176D. See M.G.L. c. 93A § 9(1); Morrison v. Toys R Us, Inc., 441 Mass. 451 (2004). Chapter 176D applies only to insurance claims settlement practices by entities "engaged in the business of insurance." M.G.L. c. 176D, § 1(a). The Estate bears the burden of proving that Supervalu was engaged in the business of insurance. D'Agostino v. Fed. Ins. Co., No. 12-11628-DJC, 2014 WL 858333, at *3-4 (D. Mass. Mar. 3, 2014) (dismissing Chapter 176D claim because plaintiff failed to plausibly allege that defendant was in the business of insurance). Supervalu argues that because it was not in the business of insurance, and therefore could not have violated Chapter

10

176D, its alleged unfair settlement practices cannot form the basis of a Chapter 93A violation. Docket No. 65 at 11-17. This Court agrees.

An entity is "in the business of insurance" if it makes "profit driven decisions about premiums, commissions, marketing, reserves and settlement policies and practices." Poznik v. Mass. Med. Prof'l Ins. Ass'n, 417 Mass. 48, 51 (1994).[47] Courts also consider whether a Company is regulated as an insurer by the Commonwealth. D'Agostino, 2014 WL 858333, at *4. "In addition, evidence of a company's profit being 'attributable to conscious and purposeful choices [the entity] made concerning premiums, marketing and settlement policies and practices, [are] all factors to be taken into account in applying the test set forth in Poznik.'" Id. (citation omitted). Further, courts consider whether the insurer assumes any "risk of loss." Id. (citing Poznik, 417 Mass. At 50-51).

"Entities which are in the business of 'claims facilitation' as it pertains to managing the insurance risk for another entity, can fall within the reach of c. 176D." Id. (citing Miller v. Risk Mgmt. Found. of Harvard Med. Inst., Inc., 36 Mass. App. Ct. 411, 418-19 (1994)). However, "[e]ven if an entity's function is to minimize the ultimate exposure of an insurer, this entity is not engaged in the business of insurance within the meaning of Chapter 176D, unless, for example, it had ultimate control over determinations of eligibility and claim coverage and has unfettered discretion concerning the use of refunds from insurance companies." Id. (internal quotations and citations omitted).

---

[47] Poznik was superseded in part by statute, but only to the extent that M.G.L. c. 176D, § 1 was amended in 1996 to include in the Massachusetts Insurers Insolvency Fund and any joint underwriting association within the definition of "person" for purposes of Chapter 176D. See D'Agostino, 2014 WL 858333, at *3 n. 1 (D. Mass. Mar. 3, 2014) (citing Wheatley v. Mass. Ins. Insolvency Fund, 465 Mass. 297, 300 (2013)). Massachusetts courts continue to apply Poznik in evaluating whether an entity is in the business of insurance. Id. (citing Morrison, 441 Mass. 451, 455 (2004); Cortes v. Clinton Housing Auth., No. 10-0285-D, 2010 WL 5188457, at *2 (Mass. Super. Nov. 3, 2010)).

11

Morrison v. Toys R Us, Inc., 441 Mass. 451 (2004), is instructive. In Morrison, the plaintiff was injured when she was struck by a falling sign while at a Toys "R" Us store ("Toys"). The store's claims adjusters conducted settlement negotiations with the plaintiff. The store countered plaintiff's demand of $250,000 with offers of $15,000, $30,000 and $45,000. Plaintiff won at trial and was eventually awarded damages of $250,000. Plaintiff then contended that Toys violated Chapter 93A when it offered low settlement amounts in view of its liability and the receipt of Chapter 93A demand letters.

The Massachusetts Supreme Judicial Court stated that such conduct is only unlawful when committed by entities "engaged in the business of insurance," and concluded that those standards cannot be extended to a "self-insurer such as Toys, which had no contractual obligation to settle the plaintiff's claim and is not otherwise regulated by the Commonwealth for insurance activities." Id. at 455. The court stated that the fact that Toys employs claims adjusters to administer and negotiate claims does not make it a member of the insurance industry, and the decision to self-insure or not insure against certain losses arising from the operation of its retail stores does not transform it into an insurer for purposes of Chapter 93A. Id. at 456.

Similar to Morrison, Supervalu's internal management of the Estate's claim did not transform Supervalu into an insurer. The record shows that Shaw's was self-insured up to the amount of $2,000,000 and Supervalu was acting as a centralized claims handler for Shaw's with respect to claims under this self-insured retention. See Def. SOF ¶¶ 16-20; 34, 37; Pl. SOF ¶¶ 16-20. There is no evidence that Supervalu was contractually obligated to settle the Estate's claim against Shaw's. In this respect, the Estate points to Supervalu's assertion in its statement of undisputed facts that "[t]hrough its subsidiary's acquisition of Albertson's, Supervalu acquired the potential liability related [sic] the Plaintiff's claim against Shaw's, as well as the coverage

available under the existing, 'occurrence' based policies." See Docket No. 87 at 11-12. This statement, however, does not establish the type of contractual obligation required of insurers to settle claims of insureds. The statement establishes only that Supervalu assumed Shaw's liabilities pursuant to the purchase agreement, which is different from insuring another entity's risks. See Blacks Law Dictionary 802 (7th ed. 1999) (defining insurance as "an agreement by which one party assumes a risk by another party in return for a premium payment" up to a certain amount.). The Estate has pointed to no evidence showing that Supervalu agreed to insure Shaw's risks in return for payment of a premium.[48] It is also undisputed that Supervalu was not regulated by the Commonwealth as an insurer and did not derive any profit from its claim handling services. Def. SOF ¶¶ 26, 27, 31; Pl. SOF ¶¶ 27, 31.

The Estate argues that Shaw's was not truly self-insured based on Supervalu's method of pooling and allocating costs among its subsidiaries. Docket No. 87 at 8-10. The Estate also points to the fact that it was Supervalu who paid the judgment in the Underlying Action. Id. at 9. The Estate, however, has not pointed to any authority that these activities converted Supervalu into Shaw's insurer.[49] Indeed, these activities seem consistent with those of a self-insured entity

---

[48] The Estate purports to dispute Supervalu's statement that Supervalu did not sell insurance to its subsidiaries or charge premiums to its subsidiaries. See Pl. SOF ¶ 26. In so doing, the Estate cites to deposition testimony stating that Supervalu allocated premium expenses to its subsidiaries. Id. However, that testimony simply establishes that Supervalu paid premiums to outside insurance companies on behalf of its subsidiaries and then allocated those expenses to its subsidiaries, including Shaw's. See Docket No. 71-1 at 32.

[49] In its opposition, the Estate states that it "reserves the right to retain an expert to opine on the self-evident fact that Supervalu's conduct was akin to that of an insurer and/or a TPA." Docket No. 87 at 5, n. 4. However, the deadline for the Estate to disclose experts expired on April 30, 2014. Docket No. 16 at 2. It was the Estate's responsibility to determine whether an expert was necessary to prove its case prior to that deadline and, if unable to meet it, to seek an extension from the Court. See Docket No. 55 ("Requested changes as to other [non-fact discovery] scheduling deadlines shall be made by motion, with Rule 7.1 certificate.").

13

managing risks and exposure, especially when, by its acquisition of Albertson's, Supervalu had acquired Shaw's potential liability with respect to the Estate's claim. Def. SOF ¶ 19, Pl. SOF ¶ 19.

The Estate then argues that Supervalu qualifies as engaged in the business of insurance as a third-party administrator, citing to Miller v. Risk Mgmt. Found. of Harvard Medical Inst., Inc., 36 Mass. App. Ct. 411 (1994). See Docket No. 87 at 10-12. The Estate's reliance on Miller is misplaced. The defendant in Miller was found to be engaged in the business of insurance because it handled legal claims that implicated insurance coverage under policies issued by the Controlled Risk Insurance Company. See Miller, 36 Mass. App. Ct. at 416-418. "The significance of the holding of the Appeals Court in the Miller case is that an insurance company cannot evade its statutory duties imposed by G.L. c. 176D by delegating its work." Morrison, 441 Mass. at 455-456. Miller does not apply to entities that handle legal claims that do not seek payment under any policy of insurance. See id. Here, there is no evidence that Supervalu was handling claims arising under an insurance policy issued by anyone else.

Finally, the Estate argues that Supervalu is engaged in the business of insurance through its ownership of a subsidiary, Risk Planners, which was an insurance broker for different purposes and customers unrelated to Shaw's or Supervalu. Docket No. 87 at 12-13. The Estate

---

The Estate also states that "[t]o the extent an expert opinion would be useful to further establish these facts for purposes of summary judgment, a request is made pursuant to Fed. R. Civ. P. 56(d) that the Court defer a ruling on this motion to allow disclosure of an expert report." Docket No. 87 at 5, n. 4. Rule 56(d) provides in relevant part that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion . . .; (2) allow time . . . to take discovery." Fed. R. Civ. P. 56(d). A party who wishes to invoke Rule 56(d) must act diligently and proffer an affidavit that "(i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion." Jones v. Secord, 684 F.3d 1, 6 (1st Cir. 2012) (quotations omitted). The Estate has failed to satisfy the requirements of Rule 56(d).

does not dispute that there is no relationship between Risk Planners and the investigation, defense, settlement, appeal or payment of the judgment in the Underlying Action. See id.; see also Pl. SOF ¶¶ 67-69. Rather, it argues that Chapter 176D does not require that the insurance activities be related to the underlying claim. Id. at 13. In addition to providing no legal authority for this proposition, the Estate's argument defies common sense. The Estate has presented no evidence that Supervalu itself was engaged in Risk Planners' insurance-related activities. The Estate has also presented no evidence that would justify attributing Risk Planners' activities to Supervalu.

Accordingly, the Court finds that the Estate has not raised any genuine issue of fact regarding whether Supervalu was engaged in the business of insurance, as required for a claim for unfair settlement practices under Chapters 93A and 176D. The Court therefore recommends that the District Court grant Supervalu's motion for summary judgment.

B. Motion To Certify Questions To The SJC

The Estate also requests that the Court certify two questions to the SJC "[t]o the extent the Court disagrees with the Estate that Supervalu is 'engaged in the business of insurance.'" Docket No. 79 at 2. The two questions are as follows:

(1) Whether a parent company that adjusts, negotiates and settles insurance claims for an indirect subsidiary in an unfair and deceptive manner can evade liability under G.L. c. 176D by virtue of owning stock of an intervening subsidiary that controls a self-insured entity.

(2) Whether a parent company that wholly owns insurance and non-insurance businesses and adjusts claims for its non-insurance businesses is "engaged in the business of insurance" for purposes of holding it liable for its unfair and deceptive business practices pursuant to G.L. c. 176D.

15

For the following reasons, the Court recommends that the District Court deny the motion.

1. Standard Of Review

"A federal court may, in its discretion, certify to the SJC a question of Massachusetts law that is 'determinative of the cause then pending in the certifying court' and as to which 'it appears to the certifying court there is no controlling precedent in the decisions of [the SJC].'" Diaz v. Jiten Hotel Mgmt., Inc., 671 F.3d 78, 84 (1st Cir. 2012) (citing Mass. S.J.C.R. 1:03; In re Hundley, 603 F.3d 95, 98 (1st Cir. 2010)). Thus, it is only appropriate to certify a question to the SJC if there is no controlling SJC precedent and the Court cannot, through consideration of the relevant case law, determine "what the state law is." Sarro v. Philip Morris USA, Inc., No. 08-10224-MLW, 2010 U.S. Dist. LEXIS 46450, at *12 (D. Mass. May 12, 2010) (citations omitted).

"Absent clear state court precedent, however, courts may consider a variety of sources 'tending convincingly to show how the highest court in this state would decide the matter at hand.'" Mount Vernon Fire Ins. Co. v. VisionAid, Inc., No. 13-12154-NMG, 2014 U.S. Dist. LEXIS 69234, at *5 (D. Mass. May 19, 2014) (citing Michelin Tires (Canada), Ltd. v. First Nat'l Bank, 666 F.2d 673, 682 (1st Cir. 1981)). "When the highest state court has not issued a definitive ruling on the precise issue at hand, the federal courts may refer to analogous decisions, considered dicta, scholarly works, or other reliable sources to ascertain how the highest court would rule." Sarro, 2010 U.S. Dist. LEXIS 46450, at *5 (citing Losacco v. F.D. Rich Constr. Co., 992 F.2d 382, 384 (1st Cir. 1993)). The Court should not use the certification procedure "when the course the state courts would take is reasonably clear." Id. (citing Fischer v. Bar Harbor Banking & Trust Co., 857 F.2d 4, 8 (1st Cir. 1988)). Further, "[t]he purpose of certification is to ascertain what the state law is, not, when the state court has already said what it

is, to afford a party an opportunity to persuade the court to say something else." Sarro, 2010 U.S. Dist. LEXIS 46450, at *13 (citations omitted).

2. Certification Is Not Appropriate

In this case, it is not necessary or appropriate to certify the questions proposed by the Estate. First, the Court notes that the questions proposed by plaintiff misstate and/or assume facts that have no support in the record. They are also highly argumentative. For example, Question No. 1 assumes that Supervalu acted in a deceptive and unfair manner, which Supervalu has denied.

Although the proposed questions are inartfully crafted, they are directed to determining whether Supervalu is engaged in the business of insurance for purposes of Chapter 176D liability. As shown by the preceding analysis on Supervalu's motion for summary judgment, however, the Court is able to determine with reasonable clarity the course that the SJC would take in this case. Therefore, even though the SJC has not yet addressed the exact facts in this case, the Court finds no unprecedented legal issue that would warrant certification to the SJC.

Finally, the Estate's request is untimely. The issue whether Supervalu was engaged in the business of insurance was joined on July 18, 2013 when Supervalu filed its answer. Docket No. 6 at 5. At the latest, the Estate must have been aware that this would become a key issue in this case as of March 2014, when Supervalu raised it in connection with the parties' discovery disputes. See, e.g., Docket No. 25 at 2. Despite being aware of the issue for many months, it is only now, being faced with a motion for summary judgment, that the Estate raises the issue of certification. The form of the Estate's request is telling: the Estate only requests certification in the event that the Court disagrees with its position that Supervalu is engaged in the business of insurance. See Docket No. 79 at 2, 4. The First Circuit "does not look favorably upon a

17

plaintiff 'trying to take two bites at the cherry by applying to the state court after failing to persuade the federal court,'" which is what the Estate appears to be doing in this case. Stewart v. Milford-Whitinsville Hosp., 349 F. Supp. 2d 68, 71 (D. Mass. 2004) (quoting Cantwell v. Univ. of Mass., 551 F.2d 879, 880 (1st Cir. 1977)).

Accordingly, this Court recommends that the District Court deny the Estate's motion to certify questions of law to the SJC.

IV.  RECOMMENDATION

For the reasons stated herein, this Court recommends to the District Judge to whom this case is assigned that she grant Supervalu's motion for summary judgment (Docket No. 62) and deny the Estate's motion to certify questions of law to the SJC (Docket No. 78).

V.  REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983

F.2d 343 (1st Cir.1993).

           /s/ Jennifer C. Boal
           JENNIFER C. BOAL
           United States Magistrate Judge